IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANASONIC CORPORATION OF NORTH AMERICA (formerly known as MATSUSHITA ELECTRIC CORPORATION OF AMERICA) and MATSUSHITA ELECTRICAL INDUSTRIAL CO., LTD., <br><br>Plaintiffs<br><br>v.<br><br>PATRIOT SCIENTIFIC CORPORATION; TECHNOLOGY PROPERTIES LIMITED, INC; CHARLES H. MOORE, et al.<br><br>Defendants. | No. C05 4844 MJJ<br>No. 05-04847 MJJ<br>No. 05-04845 MJJ<br>No. 05-04838 MJJ<br><br>**ORDER GRANTING DEFENDANT'S STAY OF PROCEEDING** |

**INTRODUCTION**

Before the Court is Defendant Technology Properties Limited, Inc.'s ("TPL") motion to dismiss, stay or transfer the present action.[1] This motion is opposed by Plaintiffs Panasonic Corporation of North America ("Panasonic") and Matsushita Electrical Industrial Co., Ltd. ("MEI"). For the following reasons, the Court **GRANTS** Defendant's motion to stay further proceedings in this action pending the outcome of the action in the United States District Court for Eastern District of Texas, captioned *Technology Properties Limited Inc. v Fujitsu, et al.*, Case No. 2-05CV-494.

---

[1] Docket No. 16, Filed January 6, 2006. For the sake of judicial economy, the Court will address parallel motions filed in Cases No. 05-04847, 05-04845, 05-04838, as they raise the same arguments.

**FACTUAL BACKGROUND**

On December 23, 2003, Patriot Scientific Corporation ("Patriot") filed suit in the Northern District of California accusing Fujitsu Microelectronics America, Inc. ("FMA") of infringing U.S. Patent No. 5,809,336 ("'336 patent") (hereinafter, "the Oakland action"). Around the same time, Patriot separately filed suit against four other companies - Matsushita Electric Company of America (now known as Panasonic), NEC USA, Inc., Sony Corporation of America, and Toshiba America, Inc. - in three other jurisdictions.

On February 11, 2004, the parties in these actions stipulated to consolidate these cases into the Oakland action. Pursuant to the stipulation, each separately filed action was voluntarily dismissed and Patriot filed a Consolidated Amended Complaint in the Oakland action.

At that time, it was not clear who was the rightful owner of the patent portfolio containing the '336 patent. On February 13, 2004, Patriot filed a separate complaint in the Northern District of California (Case No. 04-0618 (JF)) against TPL, Daniel E. Leckron, and Charles H. Moore ("the Moore action") seeking resolution of the ownership rights of the Moore Microprocessor Patent ("MMP") Portfolio. The MMP Portfolio included the '336 patent, as well as United States Patent Numbers 6,598,148 (the "'148 patent"), and 5,784,584 (the "584 patent"). Patriot also added TPL as a defendant in the Oakland action.

On May 19, 2005, Judge Armstrong, who was presiding over the Oakland action, issued an order inquiring whether the parties wanted to dismiss the Oakland action without prejudice pending the resolution of the Moore action. Judge Armstrong's order required that, in the event that the parties decided not to dismiss the Oakland action, the parties "clearly identify the matters to be heard by this Court and...provide the Court with a proposed scheduling order that sets forth the earliest possible dates for discovery cut-off, motion cut-off, pretrial, and trial."

On June 7, 2005, Patriot and TPL settled their dispute and resolved the ownership of the MMP Portfolio. Pursuant to the settlement, TPL maintained the complete and exclusive right to license and enforce the MMP patents. In return, Patriot was to receive a share of the net proceeds.

Subsequent to the TPL-Patriot agreement, TPL engaged in settlement discussions with the defendants in the Oakland action. TPL also sought and obtained a stay of litigation in order to

continue settlement discussions. As part of this effort, TPL and the defendants in the Oakland action made several statements to the court in a Joint Case Management Conference Statement & Report ("Joint CMC Statement") dated June 29, 2005. TPL submitted the following:

> "In addition, since TPL has only just now been placed in charge of the infringement litigation, it is not in a particularly good position to propose 'earliest possible dates for discovery cut-off, motion cut-off, pretrial and trial.'
>
> If the Computer Company Case has not been settled within 60 days, TPL will file a supplemental and/or amended pleading substituting itself for Patriot, and propose appropriate dates for discovery cut-off, motion cut-off, pretrial and trial...."

In the same Joint CMC Statement, Panasonic and the other defendants stated:

> "TPL has represented that it has just recently been placed in charge of this infringement litigation and apparently needs time to make decisions about how to proceed, including whether to seek leave to file a supplemental and/or amended pleading substituting itself for Patriot Scientific as the plaintiff."

TPL later requested that the court again stay the Oakland action. In so doing, TPL submitted similar statements as those above in a Joint CMC Statement and Report filed on September 23, 2005. However, the court denied TPL's request and lifted the stay of the Oakland action case.

On October 24, 2005, TPL filed a complaint for patent infringement in the Eastern District of Texas (the "Texas action") against Fujitsu Limited, Panasonic, NEC Corporation, Toshiba Corporation, and 16 of their United States subsidiaries (collectively, "the Texas Defendants"). Among the Texas Defendants were all of the defendants involved in the Oakland action.[2] The complaint in the Texas action alleged infringements of the '336 patent, the '584 patent, and the '148 patent.

On October 24, 2005, the same day that TPL filed in Texas, Patriot dismissed its complaint in the Oakland action. Subsequently, on November 28, 2005, Panasonic and MEI filed the instant action (the "Panasonic action") in the Northern District of California, seeking a declaratory judgment of non-infringement of the same three patents currently at issue in the Texas action. That

---

[2] TPL added some additional defendants to the Texas action.

3

same day, the other Oakland defendants filed their own declaratory actions in this district, resulting in five separate actions filed against TPL on November 28, 2005.[3]

## LEGAL STANDARD AND ANALYSIS

### A. "First to File" Rule

Where a complaint involving the same parties and same issues has already been filed in a different federal district, the court in which the second suit is filed may either transfer, stay, or dismiss the second suit. *Alltrade Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). The "first to file" rule normally serves the purpose of promoting efficiency and should not be disregarded lightly. *Church of Scientology of California v. United States Department of the Army*, 611 F.2d 738, 750 (9th Cir. 1979). The concern is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of other courts, and to avoid piecemeal resolution of issues that call for a uniform result. *Colorado River Conser. Dist. v. United States*, 424 U.S. 800, 818-820 (1976). In order to apply the rule, the moving party, usually the defendant, must satisfy three factors: 1) the chronology of the two actions; 2) the similarity of the two actions; and 3) the similarity of the issues. *Alltrade,* 946 F.2d at 625-626.

Here, the instant action involves the same issues and parties involved in the Texas action. In both actions, the same parties dispute whether the same three patents have been infringed.[4] TPL initiated the Texas action on October 24, 2005, a full month before Panasonic initiated the instant action. Absent any compelling exception to the general rule, this Court should grant deference to the Texas court and allow that court to determine whether to try the case.

A court may determine not to follow the "first to file" rule when circumstances indicate bad faith, anticipatory breach, or forum shopping. *Alltrade Inc. v. Uniweld Products, Inc.* 946 F.2d 622, 628 (9th Cir. 1991). The court is permitted an ample degree of discretion in determining whether or

---

[3] 05-4837 MJJ (voluntarily withdrawn), 05-4838 MHP, 05-4845 CW, 05-4847 WHA, and the instant action, 05-4844 CRB, filed November 28, 2005.

[4] Panasonic does not dispute that both suits involve the same parties. Even if Panasonic disputed this contention since Patriot, Moore, and Leckrone are absent from the Texas suit, all three have consented to be joined to the Texas action. See Def. Mot. p. 10.

4

1  not to exercise an exception to the general "first to file" rule. *Alltrade*, 946 F.2d at 628 (citing
2  *Ketrotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183-84 (1952).

3  Panasonic asserts that the Court should not follow the general rule because TPL acted in bad
4  faith by not complying with Patriot's stipulation in the Oakland action. In that agreement, Patriot
5  promised to prosecute it's patent infringement suit in the Northern District of California against
6  Panasonic and other entities.[5] However, TPL was not a party to the Oakland action when Patriot
7  agreed to this stipulation. TPL only became a party in the Oakland action *after* Patriot's stipulation.
8  Furthermore, when Patriot amended its complaint to incorporate TPL into the Oakland litigation,
9  TPL was joined as an adverse party. Only subsequent to the amended complaint did Patriot and
10 TPL reach a settlement which aligned their interests. Since TPL was a separate entity and did not
11 agree to the terms and conditions of Patriot's sitpulation, TPL is not bound by Patriot's agreement.[6]

12 Panasonic next contends that TPL made misrepresentations to the Oakland court, and that
13 on this basis, the Court should not follow the "first-to-file" rule. Panasonic maintains that after the
14 TPL-Patriot settlement, TPL represented to Judge Armstrong that TPL would continue to litigate
15 the patent dispute in the Northern District. Panasonic alleges that the Oakland defendants relied on
16 TPL's representations, and that TPL acted in bad faith when it initiated the Texas action and
17 permitted Patriot to dismiss the Oakland action. Panasonic urges the Court to hold TPL to its
18 alleged promise. However, Panasonic overstates the scope of TPL's representations to the Oakland
19 court. Plaintiff relies on statements which appear as part of a request for a 60-day stay of
20 proceeding to pursue settlement discussions.[7] This statement was not a promise that TPL would
21 unconditionally continue with the existing case, nor was it a promise that TPL would maintain any

---

[5] 2/11/04 MDL Stipulation.

[6] Panasonic relies on *Fred Hutchinson Cancer Center Research Ctr. v. United of Omaha Life Ins. Co.*, 821 F. Supp. 644 (D.Or. 1993), for the proposition that TPL is bound by Patriot's stipulation, enforceable under the doctrine of promissory estoppel . However, *Hutchinson* is clearly distinguishable from the present case because the promise in that involved a third party beneficiary to an agreement. Here, no such third party beneficiary exists, as Defendants were actual parties to their agreement with Patriot, and were not third party beneficiaries to any explicit agreement between Patriot and TPL. Accordingly, Panasonic's reliance on *Hutchinson* is misplaced.

[7] Case No. C03-5787 (SBA). Joint Case Management Conference Statement and Report, Filed 6/29/05. In this Joint CMC Statement, TPL states: "If the Computer Company Case has not been settled within 60 days, TPL will file a supplemental and/or amended pleading substituting itself for Patriot, and propose appropriate dates for discovery cut-off, motion cut-off, pretrial and trial."

5

future patent litigation in the Northern District.  Rather, the statement was an acknowledgment of Judge Armstrong's request for discovery cut-off dates[8] and an assurance by TPL that the request would be addressed after the stay.  Furthermore,  in the Joint CMC Statement, Panasonic and the other defendants even recognized that TPL still needed time to determine "*whether* to seek leave to file a supplemental and/or amended pleadings substituting itself for Patriot." (emphasis added).[9]  At the time,  the parties had only recently determined that TPL was the owner of the patents at issue.  TPL, as a separate and independent entity from Patriot, had the right to prosecute its patents infringement case in the manner and forum of its choosing.  There is nothing before the Court to suggest that TPL should be bound by Patriot's litigation decisions.  Accordingly, the Court finds that TPL did not misrepresent to Judge Armstrong that TPL would continue suit in the Northern District.

Finally, Panasonic contends that the Court should decline to follow the "first to file" rule because TPL forum shopped its case to the Eastern District of Texas.  However, there is evidence that TPL's decision was not based purely on forum shopping considerations.  One of the inventors of the patents at issue resides in Texas.  Moreover, "unless the balance [of private and public interest factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  Defendant's alleged forum shopping alone, without more,  is not enough to compel the Court to disregard the first-to-file rule.

Plaintiffs have given the Court little reason to dispense with the "first to file" rule. Accordingly, the Court will follow the rule and stay this action pending the outcome of the Texas action.

/ / /

/ / /

/ / /

---

[8] Judge Armstrong's Order, dated 05/19/2005, requests the "parties provide the Court with a proposed scheduling order that sets forth the earliest possible dates for discovery cut-off, motion cut-off, pre-trial and trial."  Additionally, the sentence immediately before TPL's statement at issue in the Joint Case Management Conference Statement and Report (6/29/05) mentions Judge Armstrong's request.

[9] Case No. C03-5787 (SBA). Joint Case Management Conference Statement and Report, Filed 6/29/05.

1  ///

2  ///

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Stay this case pending resolution of the Texas action.[10]  This order also stays the following related actions in this district:  05-4847, 05-4845, 05-4838.  The parties are ordered to provide the Court with a status of the Texas action every six months from the date of this Order, or sooner upon resolution of the Texas action as to any of the parties.

**IT IS SO ORDERED.**

Dated: March 16, 2006

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

---

[10]Alternatively, Defendant has argued  that the Court should decline to exercise its discretionary jurisdiction over Plaintiffs' declaratory action.  Since Defendant essentially makes the same argument as to both grounds, and the Court is already granting a stay in this action, the Court declines to address the issue of the exercise of discretionary jurisdiction.